**In re Richard T. BAKER, Debtor.**

**TITLE AND TRUST CO. OF FLORIDA, Plaintiff,**

v.

**Richard T. BAKER, Defendant.**

**Bankruptcy No. 81–229.
Adv. No. 81–251.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 9, 1985.

Ollie Ben Butler, Jr., Tampa, Fla., for debtor/defendant.

Langfred W. White, James P. Knox, Tampa, Fla., for plaintiff.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the immediate matter under consideration involves an adversary proceeding commenced by Title and Trust Company of Florida (Title and Trust) against Richard T. Baker, the Debtor in the above-styled case. Title and Trust seeks a determination that the sum of $34,190.38, which allegedly represents sums paid by Title & Trust in satisfaction of claims, litigation costs and attorneys' fees resulting from the Debtor's false representations in executing Affidavits of No-Liens, is a non-dischargeable debt. The Complaint to Determine Non-dischargeability of Debt is set forth in three (3) Counts, although Count III was dismissed prior to trial. Count I seeks a determination that the Debtor used the corporate entity, Buford, Inc. as a mere alter ego, that the debt owed to Title and Trust is actually an obligation of the individual debtor and that the debt is non-dischargeable pursuant to § 523(a)(2)(A). Count II also seeks a determination of non-dischargeability pursuant to § 523(a)(2)(A) and alleges that the Debtor obtained money or property from the Plaintiff inasmuch as disbursements made by Title and Trust satisfied obligations of

Buford, Inc., on which the Debtor was the guarantor.

The Court heard testimony of witnesses and argument of counsel, considered the documentary evidence and the record in its entirety, and finds the following facts:

On August 13, 1976 the Debtor and his wife, Marilyn J. Baker formed Buford, Inc., a Florida corporation, for the purpose of constructing and selling real estate. The Bakers were the sole shareholders, and with the exception of a short period of time in late 1976 and early 1977, the sole officers and directors. The corporation was involuntarily dissolved in 1979 for failure to file its annual report and Buford, Inc., filed a Voluntary Petition for Relief pursuant to Chapter 7 of the Bankruptcy Code.

Between May 1977 and January 1978 Buford, Inc., acquired title to four (4) separate parcels of real property (Pl's Exhs. 3, 4, 5, 6) with the intention of constructing a single family dwelling on each parcel and selling the parcel as improved. In conjunction with the intended construction on the four lots, the Debtor, on behalf of Buford, obtained construction loans from Palm State Bank and executed four (4) promissory notes in the amounts of $20,700, $22,050, $33,635 and $20,160 which were secured by mortgages on the separate real parcels of real property. (Pl's Exhs 7–14). The Debtor and his wife individually guaranteed each of the obligations. Eventually, the homes were completed and sold to the ultimate purchasers, Juanita Radford, Mr. & Mrs. Robert J. Smith, Mr. and Mrs. Hubert R. Moore and Mr. & Mrs. Floyd J. Bumgarner. (Pl's Exhs. 15–18).

Abstract and Title Company of Hillsborough County, (Abstract and Title) a wholly owned subsidiary of Title and Trust, acted as the closing agent and also issued the Plaintiff's title insurance policies in conjunction with each of the sales. In each case, Richard T. Baker, on behalf of Buford, Inc., executed Affidavits of No Liens. (Pl's Exhs. 20–23) Abstract and Title closed the transactions, issued title insurance and made disbursements from their escrow account.

It appears that at the time of each closing, Buford, Inc. was indebted on an open account, to McGinnes Lumber Company, a supplier of construction materials. It further appears that McGinnes sent, by certified mail, notices to owner prior to the closings, which notices were received by Jane Whittaker, an employee of Buford, Inc., who placed the notices in the corporate files without informing the Debtor of their receipt. While the Debtor admitted that he was aware of an outstanding balance to McGinnis at the time of the Bumgarner closing, he endorsed a check over to Palm State Bank who was to pay McGinnis. The Debtor further testified that he had no knowledge of any indebtedness or notices to owner at the time of the other three (3) closings.

McGinnis filed Claims of Lien against each of the four (4) properties and Title and Trust was ultimately obligated to settle, satisfy or litigate the claims of lien. Consequently, Title and Trust asserts that the Debtor is obligated to reimburse the Plaintiff for sums expended, and that the debt is non-dischargeable because the Debtor executed materially false affidavits of No Liens upon which Title and Trust reasonably relied to its ultimate economic detriment. The Plaintiff further contends that the Debtor obtained money or property inasmuch as he and his wife were released from their personal guarantees on promissory notes in favor of Palm State Bank which were satisfied upon closing. Of course, Title and Trust also contends that Buford, Inc. received proceeds from each of the closings and that since Buford is merely the alter ego of the Debtor, the Debtor, in fact, received cash at closing.

Based on the facts as adduced from the record, this Court is satisfied that the Debtor, at all times, operated his business as a sole proprietor despite the existence of a corporate charter. There is no doubt that the Debtor disregarded all corporate formalities and was merely acting as an indi-

vidual contractor. There is no evidence that Buford was capitalized to any extent; that stock certificates were ever issued; that there was ever a functioning Board of Directors; or that board meetings were ever conducted or minutes kept. Thus, it is clear that the Debtor, individually, is liable in the event that the Court concludes that the Plaintiff is entitled to recover.

■ This leads to the ultimate question of whether Title and Trust established with the requisite degree of proof, all of the operating elements of § 523(a)(2)(A). Under § 523(a)(2)(A), the Plaintiff has the burden to establish that the Debtor knowingly made false representations with the intention of deceiving a creditor who reasonably relied on the representations and as a result sustained damages. *In re Ballard*, 26 B.R. 981 (Bankr.Conn.1983).

■ There is no doubt, in the case at bar, that the Debtor executed Affidavits of No Liens which were false and that the Plaintiff sustained economic loss. However, the record is woefully short of the degree of proof required to establish either (1) that the Debtor knew of the existence of the lien claims at the time he executed the documents, or (2) that he executed the same with the intention of deceiving Title and Trust. While the evidence reveals that the Notices to Owner were sent and, in fact, received there is no competent evidence to establish that the Debtor had any knowledge of their existence. At best, the notices, upon receipt, were placed in files and never brought to the Debtor's attention.

Finally, there is absolutely no evidence in the record to warrant the inference that the Debtor submitted the documents with the requisite intent to deceive. Based on the foregoing, this Court is satisfied that the claim of non-dischargeability cannot be sustained and the Complaint must be dismissed.

A separate Final Judgment shall be entered in accordance with the foregoing.